JOHN W. LOVELAND v. THE CITY OF DETROIT.

*Municipal corporations—Power to offer rewards for convictions.*

The charter of Detroit (ch. 13, sec. 14) declares that the common
   council shall have power by a two-thirds vote to authorize the
   board of police commissioners to offer a reward for the detec-
   tion and apprehension of any one found guilty of offenses
   against the city ordinances, or of high crimes and misdemean-
   ors within the city. *Held* that in view of this provision the
   council has no power by a majority vote, and independently of
   the police commissioners, to authorize the mayor to offer
   rewards for the conviction of incendiaries.

Error to Wayne. Submitted June 30. Decided July 2.

ASSUMPSIT. Plaintiff brings error.

*Edwin F. Conely* for plaintiff in error. A municipal-
ity should be allowed considerable latitude of discretion
in determining whether an emergency has arisen that
will justify extraordinary measures, such as offering
rewards for incendiaries, 1 Dillon Mun. Corp. § 91;
*York v. Forscht,* 23 Penn. St., 391; *Crawshaw v. Rox-
bury,* 7 Gray, 374; *Lee v. Flemmingsburg,* 7 Dana, 28;
*Gale v. South Berwick,* 51 Me., 174; *Janvrin v. Exeter,*
48 N. H., 83; the rule that an offer of a reward is
only for a reasonable time does not apply where it is
evidently meant to be a standing offer until revoked,
*Morse v. Bellows,* 7 N. H., 549; *Loring v. Boston,* 7
Metc., 409; a promise to pay a reward or extra-legal
fees to an officer for doing a duty imposed on him by
law is without consideration, but a distinction is made
where he is under no obligation to do the special service
for which the reward was offered, *Bridge v. Cage,*
Cro. Jac., 103; *Harris v. Watson,* Peake, 72; 1
Hawkins P. C., ch. 58, § 4; *Stotesbury v. Smith,* 2
Burr., 924; *Morris v. Burdett,* 1 Camp., 218; *Stilk v.
Myrick,* 2 Camp., 317; *Bilke v. Havelock,* 3 Camp., 374;

*Pool v. Boston*, 5 Cush., 219; *Shattuck v. Woods*, 1 Pick., 175; *Callagan v. Hallett*, 1 Caines, 104; *People v. Supervisors*, 12 Wend., 257; *Hatch v. Mann*, 15 Wend., 44; *Bright v. Supervisors*, 18 Johns., 242; *Mallory v. Supervisors*, 2 Cow., 531; *Doubleday v. Supervisors*, 2 Cow., 533; *Wendell v. Brooklyn*, 29 Barb., 204; *People v. Supervisors*, 1 Hill, 362; *Preston v. Bacon*, 4 Conn., 471; *Gillmore v. Lewis*, 12 Ohio, 281; *Debolt v. Cincinnati*, 7 Ohio St., 237; *White v. Polk Co.*, 17 Iowa, 413; *Means v. Hendershott*, 24 Iowa, 78; *Heslep v. Sacramento*, 2 Cal., 580; *Bussier v. Pray*, 7 S. & R., 447; *Carrol v. Tyler*, 2 Har. & Gill, 54; *Pilie v. New Orleans*, 19 La. An., 274; *Evans v. Trenton*, 4 Zabr., 764; *Andrews v. U. S.*, 2 Story C. C. 202.

City Counselor *F. A. Baker* for defendant in error. Rewarding paid officers for doing their duty is against public policy (*Hatch v. Mann*, 15 Wend., 46; *Pool v. Boston*, 5 Cush., 219) and without consideration, *Gillmore v. Lewis*, 12 Ohio, 281; *Means v. Hendershott*, 24 Ia., 78. See 18 Am. Law Reg., 296, n.

CAMPBELL, C. J. Plaintiff sued the city of Detroit to recover a reward for the conviction of an incendiary who was arrested in February, 1878, in the criminal act. In November, 1874, the common council passed the following resolution:

"*Resolved*, That the mayor be and he is hereby authorized to offer a reward of five hundred dollars for the apprehension and conviction of any person who has been, since the 1st day of October of the present year, or who shall hereafter be concerned directly or indirectly in any act of incendiarism in the city of Detroit."

The mayor on November 20, 1874, made a proclamation offering a reward of five hundred dollars in the same terms with the resolution.

This offer has never been withdrawn by any distinct action. The plaintiff is a policeman of the city, but claims he acted under circumstances not precluding him from receiving the reward if any is open.

The court below gave judgment for the city, and error is brought on this ruling.

It is not claimed that there is any article in the charter of Detroit which expressly empowers the council to act as was here done. But it is insisted the power is inherent in the city. On the other hand it is claimed the power is expressly limited in another way.

In 1861 a new police system was organized under chapter 13 of the charter. A board of police commissioners was created, and most of the police arrangements were specially entrusted to this board and the officers mentioned in that chapter.

By the last section (section 14) of that chapter it was enacted as follows: "The common council shall have power, by a vote of two-thirds of all the aldermen elected, to authorize the board of police commissioners to offer a reward for the detection and apprehension of any offender against the city ordinances, or of the perpetrator of any high crime or misdemeanor, committed within the city, to be paid on the conviction of such offender or criminal."

In 1867 a new police board was organized under appointment from the State. By the act making this new arrangement, the first nine sections of chapter 13 of the charter were repealed. Sess. L. 1865, Act. 78, § 38. The remaining sections have not been repealed, and the jurisdiction of the police court is regulated by a part of them.

If it had been understood that the common council had already power to offer rewards for the conviction of offenders, it must also have been assumed that the power was broad and discretionary. If there was such a power it must have been broad enough to provide for doing what was indicated by chapter 13 of the charter, and authorizing the police authorities to act. This chapter when first adopted made the police board a city and not a State agency, and the mayor had *ex officio* rights concerning its business. This section, which authorized the

41 MICH.—47.

council to empower the board to offer rewards, was entirely unnecessary if it was intended to recognize any general discretion in the council.

But this section does not allow the council to act in the matter as it acts in ordinary matters, by a majority vote. It requires two-thirds of all the members elected to the council to authorize the offering of rewards. The power is evidently considered one of such importance as to require more restriction than ordinary expenditures.

Inasmuch as the former powers of the council concerning police business were very much cut down by chapter 13, there was great propriety in requiring the action in rewarding persons procuring convictions to be under the oversight of the authorities best informed on the subject, while at the same time their action must be authorized and regulated by the council, as the governing agency of the whole city.

We cannot reconcile such a guarded provision with any reserved power to give rewards by the action of a mere majority of the council, and through other agencies than that in charge of the police supervision. It is quite unimportant whether we suppose there was or was not any implied power before chapter 13 was adopted. If there was such power, we think that chapter had the effect of defining and limiting it. If it does not limit the power it is senseless and useless.

The change from a city to a state agency cannot in our opinion have any effect to remove such limitation if it is a limitation and not a defined grant of power. The city has less instead of more immediate concern with criminal business, and less means of knowing under what circumstances rewards are needed. We see no reason why an act which expressly repeals only nine sections of the chapter, and which has been construed already as leaving other sections in force, should be supposed inconsistent with the section concerning rewards. If that section gave power to the police board

independent of the council, the case would be different, for city money cannot be supposed liable to indefinite appropriation without city action. But since there must not only be action by the council, but action requiring a larger vote than ordinary measures, the difficulty does not exist.

We think the council could not authorize the mayor, independently of the police board, to offer the reward in question. We need not, therefore, consider the right of plaintiff to earn it, nor the question of the continuance of the offer.

The judgment must be affirmed with costs.

The other Justices concurred.